GULF, C. & S. F. RY. CO. v. STATE.
(No. 6111.)

(Court of Civil Appeals of Texas. Austin.
May 14, 1919. Rehearing Denied
June 11, 1919.)

1. STATUTES ⟨⟩5—SPECIAL SESSION CALLED
BY GOVERNOR — LAWS WITHIN PROCLAMA-
TION.

Acts 35th Leg. (Fourth Called Sess.) cc. 24,
31, commonly called the "State-Wide Prohibi-
tion Act" and the "Transportation Act," were
within the subjects or purposes of the Govern-
or's proclamation, authorizing Legislature to
pass laws prohibiting any one from procuring
for or delivering intoxicants to any person in
the military or naval forces, and not in conflict
with Const. art. 3, § 40, and article 4, § 8.

2. STATUTES ⟨⟩48 — REPUGNANCY — STATE-
WIDE PROHIBITION LAW—VALIDITY.

There is no such repugnance or doubt as
to the meaning of the provisions of Acts 35th
Leg. (Fourth Called Sess.) c. 24, relating to
transportation and receipt of intoxicating liq-
uors as to render the same void.

3. INTOXICATING LIQUORS ⟨⟩17 — STATE-
WIDE PROHIBITION LAW—VALIDITY.

Acts 35th Leg. (Fourth Called Sess.) c. 24,
§ 3, making it unlawful for any railroad to
transport within or import into the state in-
toxicants, or for any person to receive the
same or to deliver the same, is not in conflict
with any existing law.

4. STATUTES ⟨⟩47 — STATE-WIDE PROHIBI-
TION LAW—VALIDITY.

Acts 35th Leg. (Fourth Called Sess.) c. 24,
§ 3, making it unlawful for any railroad to
transport within or import into the state in-
toxicants, or for any person to receive the
same or to deliver the same, is not indefinitely
framed or of such doubtful construction that it
cannot be understood from the language in
which it is expressed.

5. INTOXICATING LIQUORS ⟨⟩132—REPEAL OF
STATUTE BY IMPLICATION.

Any law which might be in conflict with
Acts 35th Leg. (Fourth Called Sess.) c. 24, §
3, as to transportation or receipt of intoxi-
cants, would be repealed thereby by implica-
tion, notwithstanding other sections of the
chapter provide that all other laws prohibiting
or regulating sale of intoxicants shall remain in
full force and effect.

6. INTOXICATING LIQUORS ⟨⟩17 — STATE-
WIDE PROHIBITION LAW—VALIDITY.

Acts 35th Leg. (Fourth Called Sess.) c. 24,
§ 3, making it unlawful for any railroad to
transport within or import into the state in-
toxicants, or for any person to receive the
same or to deliver the same, is not in contra-
vention of Const. art. 16, § 20, giving the right
to voters within certain prescribed limits to
determine from time to time whether intoxi-
cants shall be sold in such prescribed limits.

7. COMMERCE ⟨⟩14—INTERFERENCE WITH IN-
TERSTATE COMMERCE — INTOXICATING LIQ-
UORS—WEBB-KENYON ACT.

Acts 35th Leg. (Fourth Called Sess.) c. 24,
§ 3, making it unlawful for any railroad to
transport within or import into the state in-
toxicants, or for any person to receive the
same or to deliver the same, in so far as it
interferes with interstate commerce, is made
valid by Webb-Kenyon Act (U. S. Comp. St.
§ 8739).

8. INTOXICATING LIQUORS ⟨⟩261 — INJUNC-
TION—TRANSPORTATION. .

Under Act 35th Leg. (Fourth Called Sess.)
c. 24, known as the "State-Wide Prohibition
Law," injunction will lie to restrain a railroad
from using its transportation facilities in the
state for receiving, transporting, or delivering
intoxicants except for medicinal, scientific, me-
chanical, or sacramental purposes.

Appeal from District Court, Travis Coun-
ty; George Calhoun, Judge.

Suit by the State against the Gulf, Colo-
rado & Santa Fé Railway Company. From
temporary injunction granted, defendant
appeals. Affirmed.

A. H. McKnight, of Dallas, and F. J. Wren
and Terry, Cavin & Mills, all of Galveston,
for appellant.

C. M. Cureton, Atty. Gen., and W. A. Keel-
ing, Asst. Atty. Gen., for the State.

SLEEPER, Special Judge. This is an ap-
peal from a temporary injunction granted
by the district court of Travis county, at
the suit of the state against Gulf, Colorado
& Santa Fé Railway Company, restraining
the defendant from using its transportation
facilities anywhere in the state of Texas for
the purpose of receiving, transporting, or
delivering intoxicating liquors except for
medicinal, scientific, mechanical, or sacra-
mental purposes.

The action is founded on laws embraced in
chapters 24 and 31 of the Fourth Called
Special Session of the Thirty-Fifth Legisla-
ture, commonly called the "State-Wide Pro-
hibition Act" and the "Transportation Act,"
relating to intoxicating liquors within this
state.

The State-Wide Prohibition Act prohibits
the manufacture or sale of intoxicating
liquors in this state except for medicinal,
scientific, mechanical, and sacramental pur-
poses, and also makes unlawful the trans-
portation within or importation into this
state by any railroad, or the receipt of in-
toxicating liquors, or the receipt of same by
any person, firm, or corporation for such
transportation, or the delivery of same after
such transportation, or the receipt of same
after such transportation, except for medic-

inal, scientific, mechanical, or sacramental purposes. The act provides that it shall be cumulative of all laws in force, and all acts of the Fourth Called Special Session of the Thirty-Fifth Legislature prohibiting and regulating the sale of intoxicating liquors, and expressly provides that no law now in force or any act of the Fourth Called Session of the Thirty-Fifth Legislature prohibiting or regulating sale of intoxicating liquor is repealed thereby, but all such laws and acts shall remain in full force and effect. It also provides that in addition to all other remedies now provided by law and provided by said act, the Attorney General is authorized to enjoin any conduct in violation of the act, and suit therefor may be maintained in the name of the state, in Travis county. The act also provides that the provisions of the act, and the provisions of each section thereof, shall be separable, and in the event any section thereof should, for any reason, be held unconstitutional, the remaining sections shall, nevertheless, remain in full force and effect.

Chapter 31, regulating the transportation of intoxicating liquors within this state, makes it unlawful for any person in any place where sale of intoxicating liquors is prohibited to possess such liquors received from a common carrier, or to receive same from a common carrier, or to deliver same to another for shipment, or to receive same for another shipment, or to transport or deliver any intoxicating liquors in any place where the sale of intoxicating liquor is prohibited, or to transport in any manner any intoxicating liquor of any kind from a point within any other state to any person residing in this state within a territory where the sale of intoxicating liquor is prohibited, and the act also provides that same shall be cumulative, and shall not repeal other existing laws prohibiting and regulating the sale of intoxicating liquors; also that all laws and acts regulating and prohibiting sale of intoxicating liquor shall remain in full force and effect; but this chapter contains no law authorizing injunctive relief.

It is manifest that the provisions of chapter 31, making it unlawful for a common carrier to transport intoxicating liquors in this state, will not sustain the injunction granted by the district court in this case, if the State-Wide Prohibition Law comprehended in chapter 24 of such acts, in so far as it forbids the sale of such liquors, is invalid as being in contravention of section 20, article 16, of the Constitution, which provides that—

"The voters of any county, justice's precinct, town, city, or such subdivision of a county as may be designated by the commissioners' court of said county, may, by a majority vote, determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

As we have concluded that in order to decide the issues raised in this case it is not necessary to pass upon the validity of the State-Wide Prohibition Law, in so far as it forbids the sale of intoxicating liquors (and on which we express no opinion), further discussion of chapter 31 will be eliminated.

[1] It is claimed by the defendant that these acts of the Legislature were not within the subjects or purposes of the proclamation of the Governor in calling the Fourth Extra Session of the Thirty-Fifth Legislature, at which such acts were passed, and therefore, the laws are in conflict with section 40, article 3, and section 8, article 4, of the Constitution, which limit legislation in such cases to the subjects designated in the proclamation.

The objection is untenable. The proclamation authorizes the Legislature to pass laws prohibiting any person from directly or indirectly procuring for or delivering intoxicating liquors to any person enlisted or engaged in the military or naval forces of the United States, whether in uniform or not at the time. It was for the Legislature to determine the best method of enforcing the laws passed pursuant to the proclamation of the Governor, and apparently in the judgment of the Legislature this could best be done by forbidding absolutely the sale, transportation, or receipt of intoxicating liquors within this state, and such legislation was therefore within the subject designated by the Governor. The law is drastic, but its quality in that respect is discretionary with the lawmaking power.

[2-5] There is not such repugnance or doubt as to the meaning of the provisions in chapter 24, relating to the transportation and receipt of intoxicating liquors, as to render the same void. Section 3 of said chapter, making it unlawful for any railroad to transport within or import into this state intoxicating liquors, and also making it unlawful for any person to receive the same or to deliver the same, is not in conflict with any existing law, and, if valid, should be enforced. The section is not so indefinitely framed or of such doubtful construction that it cannot be understood from the language in which it is expressed, and no law has been pointed out to us with which it is in conflict. Besides, we think any law which might be in conflict with said section 3 would be repealed thereby by implication, notwithstanding the other sections of the chapter, which provide that all other laws prohibiting or regulating the sale of intoxicating liquor shall remain in full force and effect.

[6] The issues in this case depend on legislative power to make it unlawful for railroads to transport intoxicating liquors in this state, and for any person to receive intoxicating liquors which have been transported over any railroad in this state. It is

contended that such laws are invalid and in contravention of section 20 of article 16 of the Constitution, which gives the right to the qualified voters within certain prescribed limits to determine from time to time by majority vote whether intoxicating liquor shall be sold in such prescribed limits. We do not think the Transportation Act embraced in section 3 of chapter 24 is obnoxious to this objection. It reads as follows:

"Sec. 3. The transportation within or importation into this state by any railroad, common carrier, automobile, by private conveyance, or otherwise, or the receipt of any spirituous, vinous, or malt liquors or medicated bitters—capable of producing intoxication, or the receipt of same by any person, firm, or corporation, for such transportation, or the delivery of same after such transportation, or the receipt of same after such transportation—except for ·medicinal, scientific, mechanical, or sacramental purposes—shall be unlawful."

The constitutional provision does not expressly, or by implication, inhibit the law-making power, which is otherwise supreme, from enacting such law as it may deem proper, hampering and restricting traffic in intoxicating liquor, so long as such laws do not undertake to prohibit sales thereof. Bell v. State, 28 Tex. App. 96, 12 S. W. 410; Ex parte Vaccarezza, 52 Tex. Cr. R. 105, 105 S. W. 1121. In these cases the reasoning of the Court of Criminal Appeals would indicate that under a proper construction of section 20, article 16, of the Constitution the Legislature had the power to throttle almost to extermination traffic in intoxicating liquors, if indeed the opinions do not go further, as contended by the state in this case, and hold that the Legislature may even prohibit the sale of such liquors throughout the state. In the Bell Case, Judge Hurt says:

"The people of the state might desire the prohibition of saloons and not absolute prohibition; but we are seriously told that they cannot have this—that they must take absolute prohibition in order to obtain the suppression ·of saloons—and this they must receive as doled out to them by the separate action of counties, precincts, cities, and towns. This is absurd. We will follow this subject but one step further. Local option prohibits absolutely in the county of its adoption. Say that this divests the Legislature of the power to prohibit absolutely all over the state (a proposition too preposterous for discussion), may not the Legislature still retain the power to prohibit saloons? Concede that the Legislature, by reason of the local option provision of the Constitution, cannot prohibit the sale of such liquors absolutely, may it not still retain the power to prohibit the saloons? Now, it is well settled by all the authorities that the Legislature, no ·constitutional provision forbidding, has the right to absolutely prohibit the saloon business, the retail of intoxicating liquors. If, therefore, the Legislature can prohibit this business absolutely, it follows inevitably that the Legis-

lature can annex to the pursuit of such business just such conditions precedent as it may deem just. unless the citizen has granted to him affirmatively, by the Constitution of the United States, the right to sell such liquors by retail, to keep a saloon. If such right is given, the Legislature might regulate the business, but regulation could not extend to prohibition. No such right is conferred; and hence another position of counsel for appellant is unsound."

In the Vaccarezza Case, Judge Henderson quotes and approves the language and reasoning of Judge Hurt in the Bell Case. In those cases it is plainly intimated that the Legislature might pass laws closing saloons throughout the state, and if it could go to that extent, we see no reason why it might not ʼalso prohibit transportation of liquors by common carriers and prohibit persons from receiving such liquors from railroads or common carriers. See, also, Ex parte Hollingsworth, 203 S. W. 1102.

[7] The law under discussion, in so far as it interferes with interstate commerce, is made valid by the Webb-Kenyon Act of Congress (Act March 1, 1913, c. 90, 37 Stat. 699 [U. S. Comp. St. § 8739]), which. in substance, provides that transportation of intoxicating liquors from one state to another, intended by any person interested therein to be received, either in the original package or otherwise in violation of any law of such state, is prohibited, for the reason that since it is made unlawful for any person to receive such liquors when so transported, such transportation is prohibited by said act of Congress, and as no shipment could be made without the intention of some person to receive it in this state, every such shipment is prohibited and unlawful, both by state law and by the act of Congress. Clark Distilling Co. v. Western Maryland R. Co., 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; Seaboard Air Line Co. v. North Carolina, 245 U. S. 298, 38 Sup. Ct. 96, 62 L. Ed. 299. In the case last cited the court says:

"Since our decision in Clark Distilling Co. v. Western Maryland R. Co., 242 U. S. 311, 320, 324, 61 L. Ed. 326, 335, 337, L. R. A. 1917B, 1218, 37 Sup. Ct. Rep. 180, Ann. Cas. 1917B, 845, it has not been open to serious question that the Webb-Kenyon Law is a valid enactment; that 'its purpose was to prevent the immunity characteristic of interstate commerce from being used to permit the receipt of liquor through such commerce in states contrary to their laws, and thus in effect afford a means by subterfuge and indirection to set such laws at naught,' and that under it a state may inhibit shipments therein of intoxicating liquors from another by a common carrier, although intended for the consignee's personal use, where such use is not actually forbidden."

It seems plain, therefore, since it is made unlawful to receive liquors from a common

carrier by the Legislature of this state and also unlawful for a railroad to transport liquors intended to be received in violation of the law, that such legislation is in accord with the Webb-Kenyon Act, and therefore valid and enforceable.

The view of the law here expressed is not opposed to the ruling in Ex parte Peede, 170 S. W. 749. That case related to shipment of liquor into local option territory under a law which prohibited the transportation of liquor into local option territory. There was no provision in the law making it unlawful to receive liquor from a common carrier, but it was only made unlawful to receive for shipment, or deliver for shipment, or to ship intoxicating liquors into forbidden territory, but the act did not make it unlawful to receive liquor after it was shipped. So that it may be said that the law and the facts in that case did not bring it strictly within the Webb-Kenyon Act. However, the opinion of the court in Ex parte Peede seems to have been based on the decision of the Supreme Court of Delaware, in the case of Van Winkle v. State, 4 Boyce (Del.) 578, 91 Atl. 385, Ann. Cas. 1916D, 104, which latter case was reviewed by the United States Supreme Court in Clark Distilling Co. v. Western Maryland R. Co., supra, in which the court criticizes the decision and says:

"The leading state case cited is Van Winkle v. State, 4 Boyce (Del.) 578 [91 Atl. 385, Ann. Cas. 1916D, 104]. It is true in that case the state law prohibited shipment to and receipt of intoxicants in local option territory, and if the Webb-Kenyon Law had been applied, there would have been no possible ground for claiming that the state prohibitions could be escaped because the liquor was shipped in interstate commerce. But the shipment was held to be protected as interstate commerce despite the state prohibition, because the Webb-Kenyon Law was not correctly applied, for the following reason: Coming to consider the text of that law, the court said that as the Webb-Kenyon Act prohibited the shipment of intoxicants 'only when the liquor is intended to be used in violation of the law of the state,' and as the liquor shipped was intended for personal use, which was not forbidden, therefore the shipment, although prohibited by the state law, was beyond the reach of the Webb-Kenyon Act. But we see no ground for following the ruling thus made, since, as we have already pointed out, it necessarily rested upon an entire misconception of the text of the Webb-Kenyon Act, because that act did not simply forbid the introduction of liquor into a state for a prohibited use, but took the protection of interstate commerce away from all receipt and possession of liquor prohibited by state law."

[8] Injunctive relief having been provided for in chapter 24, which also makes transportation of liquors unlawful, as well as receipt from or delivery to the carriers, the remedy applied is sustained by the law.

The judgment of the district court should be affirmed; and it is so ordered.

Affirmed.

BRADY, J., being disqualified, did not sit in this case.